In the United States District Court
Eastern District of Texas
Tyler Division

| | |
|---|---|
| Dale S. Wheeler §<br>§<br>    Plaintiff, §<br>§<br>v. § Civil Action No. _____<br>§<br>FPI Management, Inc. and §<br>CEG Multifamily §<br>§<br>§<br>    Defendants. § | |

## Plaintiff's Original Complaint

Plaintiff Dale S. Wheeler ("Wheeler" or "Plaintiff") files this Original Complaint against FPI Management, Inc. ("FPI") and CEG Multifamily ("CEG") (collectively, "Defendants") and shows:

## Parties

1. Plaintiff Dale S. Wheeler is an individual citizen of Texas and a resident of Smith County, Texas.

2. Defendant FPI Management, Inc. is a foreign corporation doing business in Texas. It may be served by serving its registered agent, CT Corporation System, 1999 Bryan Street, Suite 900, Dallas TX 75201-3136.

3. Defendant CEG Multifamily is a privately held real estate firm headquartered in San Diego, California. It does not maintain a registered agent in the State of Texas.

Because it did not maintain a registered agent for service of process in Texas, it may be served by serving the Texas Secretary of State under Tex. Civ. Prac. & Rem. Code § 17.026. The Secretary of State should forward the citation to CEG Multifamily, 1199 Pacific Highway, San Diego, California 92101.

## Venue and Jurisdiction

4. Venue is proper in Smith County because the Defendants do business in Smith County.

5. This Court has federal jurisdiction over the claims asserted under Title VII, 42 U.S.C. § 1981, and 42 U.S.C. § 3617.  The Court has supplemental jurisdiction over the Texas Labor Code Chapter 21 claim.

## Factual Background

6. CEG Multifamily is a privately held real estate investment company that owns multifamily properties in Texas.  CEG hired FPI to serve as its property management company for some of its investment properties.  CEG owns a property known as The Arbors on Chimney Rock Apartments in Tyler, Texas and hired FPI to manage that property for it.

7. FPI hired Wheeler to work at The Arbors on Chimney Rock Apartments in Tyler, Texas in December 2017.  According to its mission statement, FPI is a property management company with a corporate culture grounded in "HEART (Humility, Excellent, Accountability, Respect, and Teamwork).  FPI aspires to be a model of

corporate citizenship, that instills pride in its employees, clients, residents, vendors, and business affiliates. It aspires to provide a living environment and customer service to its residents that exceed their expectations.

8. FPI hired Wheeler as Assistant Community Director to assist Tonja Wehrman, Community Director. The Arbors on Chimney Rock Apartments ("Arbors") had 176 units and was 93.18% leased when FPI hired Wheeler. Wheeler was excited to have the opportunity to work with FPI, a large and well-known property management firm. At age 67, Wheeler was older than most of the FPI employees in the FPI Northeast Texas region.

9. When Wheeler started at FPI, Wheeler's direct supervisor was Tonja Wehrman, Community Director. For most communities, it was rare for FPI to have just two office employees handling the property. In other FPI properties of a similar size, FPI typically had at least three and, sometimes, four office employees. However, FPI put only two office employees in to manage the 176-unit Arbors.

10. Built in 1979, Arbors was a Class B property that sometimes bordered on Class C. The maintenance of the property was an on-going challenge. When Wheeler started at FPI, Jeff Howard was the Maintenance Supervisor at the Arbors. In April 2018, FPI hired Gary Phillips as a permanent maintenance technician to assist Howard in building maintenance issues and make-ready of vacated apartments.

11. Arbors participated in the Tyler Housing Choice Voucher program (formerly known as Section 8) to assist low income families to allow them to live in decent, safe, and sanitary housing. The Tyler Housing Choice Voucher program is funded by the United States Department of Housing and Urban Development.  To participate in Tyler's Housing Choice Voucher program, units at the Arbors had to meet certain standards for cleanliness and safety.  Inspectors from Tyler would regularly inspect units at the Arbors to identify repairs necessary for the units to continue to be eligible to participate in the Housing Choice Voucher program.

12. When Wheeler started at FPI, Wehrman had been handling the office alone for a period of time.  There was a backlog of items to be addressed.  Wheeler spent the first few months of her employment working long hours, sometimes late at night or on weekends, to get the office caught up on backlogged items and do the training necessary to learn the FPI systems.  In February 2018, Wheeler was approved for access to the *On-Site* software and was also now expected to process background checks, credit applications and prepare lease documents and handle all issues necessary to get new tenants into their newly rented apartments.  Shortly after that, FPI used the software program *Rent Café,* which was a program that would allow tenants to set up a tenant account and pay their rent online.

13. Because Arbors was almost forty years old in 2018, maintenance of the units was an ongoing problem during Wheeler's employment.  FPI received numerous complaints

from both Wheeler and tenants at the Arbors about the conditions of the apartments and various maintenance concerns not properly repaired.

14. Jeff Howard, FPI's Maintenance Supervisor, was misogynistic and racist to both the tenants and the employees. Tenants accused Howard of sexually harassing them. Tenants also accused Howard of making racially offensive comments to them and repeating racial slurs.

15. Throughout 2018, the malfunctioning of air conditioners was an ongoing concern. Wheeler learned from Phillips that Howard had been using the wrong refrigerant, MO-99, in the older units which still used R-22. The two refrigerants were not compatible and Howard's use of the wrong refrigerant was causing the capacitor and compressor on the older units to break down.

16. In June 2018, despite many challenges with the maintenance of the property, the Arbors became 100% leased. In these months, though the leasing percentage dipped from that 100% leased rate, it continued to stay high.

17. On August 7, 2018, The Arbors (FPI) received an email from John Thompson, an inspector with the Tyler Housing Authority, outlining the repairs needed on Unit #314 to bring it up to comply with HUD standards. Wheeler prepared a Work Order and told Howard about the repairs that would need to be done on that unit. Howard went into a tirade and told Wheeler "I don't take orders from no damn n------." Wheeler was appalled by Howard's racially offensive and hostile language.

18. In late August 2018, Wehrman took medical leave for surgery. FPI hired a temporary employee from AAA Staffing to assist Wheeler. The temporary employee, Melissa Coker, was African American. On the day she arrived, Howard took her for a tour of the Arbors property in the company golf cart. When Coker returned, she had a much different demeanor and attitude.

19. Wheeler asked Coker what was wrong, Coker said she might not continue to work for FPI. When Wheeler pressed the issue, Coker told her that Howard talked non-stop about dating black women and spoke to Coker in Ebonics. Coker was offended by Howard's conduct. Wheeler tried to calm Coker's concerns.

20. Later in the week, however, Coker wanted to take a cigarette break and needed to get a cigarette from someone. Howard offered to take Coker to a resident who smoked to see if the resident had a cigarette to share. Howard introduced Coker to the resident as the temporary employee working while Wehrman was out on leave. When the resident asked why Wehrman was on leave, Howard responded "She had surgery … getting her pussy cut out." Coker told Howard that his statement was foul and Howard responded, "well, you got one too." Coker returned to the office upset and told Wheeler about this.

21. FPI received a complaint from Wheeler about Howard's actions on September 5, 2018. Wheeler sent an Incident Report regarding the maintenance needed on Unit #1012 whose residents had endured cursing and threats from Howard in response to their

continued requests to service their HVAC and Howard's racially and sexually offensive language used with Coker. Wheeler sent this Incident Report to Tanya Baird, Portfolio Manager. Baird then requested that Wheeler send a copy to Todd Scott, Director of Human Resources. Wheeler did so.

22. On September 13, 2018, FPI placed Howard on paid administrative leave. When Howard learned that he was being placed on administrative leave, Howard left the office and found Phillips. Howard told Phillips that Howard would "get even" with both Phillips and Wheeler. Howard's live-in girlfriend also threatened Phillips.

23. On September 14, 2018, Baird called Wheeler and said that Howard would be returned to his position on Monday, September 17, 2018. Wheeler was shocked that Howard was only on paid administrative leave for two days given the allegations against him. Baird told Wheeler that Mary Lou Meagher, one of the owners of CEG (the company that owned this property) was the reason Howard was returning and not being terminated. FPI is the property management company all of CEG properties in Texas.

24. Upon learning that Howard would be returning to the Arbors, residents expressed their fear and intent to move. Residents reported that Howard had made statements that Howard "would take us down" and that he "had the owner in his pocket" and "would never be fired," but that the remaining staff would be terminated.

25. On September 15, 2018, Wheeler emailed Todd Scott in Human Resources and Baird with a request that Howard remain out on the initial two-week paid leave to allow

things to cool down with the residents who feared Howard. On September 16, 2018, Wheeler emailed Scott and Baird copies of threatening texts Howard had sent to an outside vendor.

26. On September 16, 2018, Phillips submitted his own complaint to FPI outlining the hostile work environment created by Howard and his racist and sexually offensive behavior.

27. FPI returned Howard to work on September 17, 2018.

28. FPI requested additional information from Phillips on September 19, 2018 about racist or inappropriate comments Phillips had witnessed. Yet, FPI did not request additional information from Wheeler.

29. After FPI had allowed Howard to return, it reopened its investigation of Howard and put him on paid administrative leave again.

30. Because FPI had allowed Howard to return to work, Wheeler realized she needed to submit a full and detailed grievance to FPI complaining about Howard and his racially and sexually offensive behavior. Wheeler prepared a detailed letter of grievance on September 22, 2018 about Howard's inappropriate actions at the Arbors.

31. FPI received Wheeler's detailed letter of grievance on September 25, 2018 about the actions of Howard. In this letter, Wheeler complained of the hostile work environment, sexual harassment, bullying, racial discrimination, neglect of official work duties and retaliation by Howard towards Wheeler and residents at the Arbors.

32. Wheeler advised FPI that Wheeler personally heard Howard use racial slurs regarding Nigerian residents. Wheeler advised that Howard changed the way he treated another resident's fiancé in a negative way when Howard learned he might be Middle Eastern. As to the woman with the Middle Eastern fiancé, Howard called her a "stupid bitch" who needed to move out of the Arbors.

33. Wheeler advised FPI that an inspector from the Tyler Housing Choice Voucher program inspected Unit #314 and found it deficient.  The inspector outlined numerous repairs that needed to be made to bring the unit into compliance with Housing Quality Standards.  When Wheeler told Howard of the repairs that needed to be made to the unit, Howard told her "I'm not going to listen to some f------ n----- tell me what to do."

34. Wheeler advised FPI that Howard made disparaging comments about a disabled veteran with PTSD.

35. Wheeler advised FPI that Howard made threatening remarks to Phillips about her and told Phillips "that stupid f------ bitch is out to get me," referring to Wheeler.  Wheeler advised FPI that a very negative review of the Arbors was posted online just a day after Howard was placed on leave a second time.  This negative review was written by a resident who was good friends with Howard.  The review mentioned Wheeler and Phillips by name.

36. Wheeler attached copies of text messages from one vendor (a man of Asian descent) who noted that Howard was a "racist to all race even my race he'll be trying to gibberish Chinese shit all the time."

37. Wheeler attached letters to her grievance from residents who complained about Howard making them uncomfortable or making overtly sexual comments in front of them, such as referring to a resident as "she had big 'uns" and referring to female body parts. The residents expressed fear of being retaliated against by Howard if Howard learned of their complaints.

38. In Wheeler's grievance, Wheeler mentioned that Wheeler had been told Howard could return to the property with no reprimand on September 17 and that Howard had been told that Mary Lou Meagher, one of the property owners, stated she could not allow Howard to be let go because he was the reason the property was doing so well.

39. Just days after Wheeler submitted her grievance, FPI, through Scott, responded that Howard was originally returned back to work because FPI could not substantiate the claim because no corroborating evidence was provided.  However, Wheeler had submitted statements to corroborate her original complaint. On September 21, 2018, Howard was put back on paid leave but remained on the property.

40. On September 28, 2018, Baird said she was stepping down as Portfolio Manager and would be a Community Director in Waco as of October 1, 2018.  However, Baird told

Wehrman that Baird had been demoted because of Wheeler's comments about the owner being the deciding factor in allowing Howard to return from administrative leave.

41. Wehrman returned from her medical leave on October 10, 2018. Wehrman told Wheeler that Wehrman had gotten calls from both Baird and Meagher about "a bit of drama on your property while you were gone." Wehrman told Wheeler that Meagher, one of the CEG owners, wanted Wheeler fired. Wehrman told Wheeler that Meagher wanted to fire Wheeler because Meagher had concluded Wheeler was out to get rid of Howard.

42. However, Wehrman informed Meagher that Wehrman had observed Howard's non-compliance with his duties, his sexual advances to residents and racial slurs for quite a period of time and that she had reported those issues to upper management before.

43. On October 19, 2018, Wehrman filed her own detailed letter of grievance with FPI.

44. From that point forward, Wheeler's days at FPI were numbered. Wheeler could do nothing right.

45. FPI replaced Baird as Portfolio Manager with Aniqua Trice.

46. FPI, through Trice, set Wheeler up to fail and embarked on a campaign to either drive Wheeler to quit or to finally terminate Wheeler. Trice tried to force Wehrman to fire Wheeler before the end of 2018. However, Werhman delayed moving forward with termination despite Trice's instructions.

47. FPI finally terminated Howard on November 26, 2018.  FPI asked Howard to leave the property.  Howard did so December 6, but not until Wheeler and Wehrman were forced to call the police due to threats of violence by Howard and his live-in girlfriend.

48. FPI issued Wheeler her first performance review on January 09, 2019 (dated December 20, 2018.)  FPI uses a score of "1" = "Exceeds Expectations, "2" = "Meets Expectations" and "3" = "Needs Improvement."  FPI's review of Wheeler gave her one 1, five 2's, and 6 3's.  Wheeler objected to the negative performance review.  Wehrman told Wheeler not to worry about it and that Wehrman had not wanted to submit the negative review, but Trice made her do it.

49. Interestingly, the only time Wheeler had met Trice had been briefly at the holiday party in December 2018.  Trice had told both Wheeler and Wehrman there was a "new sheriff in town."  However, Trice did not take the time to travel to the Arbors to see the property.

50. Just weeks after her negative review, on January 29, 2019, FPI gave Wheeler "30-Day Performance Plan".  Wehrman delivered the evaluation, but it had been dictated to Wehrman by Trice.

51. In early 2019, FPI's software program, *Rent Café* had many unexplained technical issues, which had been ongoing since mid-2018.  This caused many problems in allowing the tenants to log into their accounts and timely make the rent payments. Because they could not resolve the software problems, in desperation, Wehrman contacted Meagher to

request assistance. Only after Wehrman called Meagher did Trice come visit the Arbors property for the first time. When Trice did so, she reminded Wehrman and Wheeler there was a new sheriff in town.

52. In February 2019, there were numerous problems with *Rent Café* causing rent payments and deposits to be late. These problems caused numerous improper late fees to be assessed to tenant's accounts, which had to be removed. These problems added extensive additional work to Wheeler's already full plate. Despite the additional work, Trice refused to authorize any overtime work for Wheeler that would allow her to complete her work duties.

53. On February 28, 2019, Wheeler became ill with the flu and missed several days of work. Trice was suspicious about Wheeler's absence and questioned whether Wheeler was sick or not.

54. FPI fired Wheeler on March 19, 2019.

55. FPI contends that Wehrman made the decision to terminate Wheeler because of Wheeler's performance problems. However, Werhman told Wheeler that Wehrman had been instructed by Trice to terminate Wheeler.

56. FPI fired Wehrman a few months after firing Wheeler.

57. Wheeler timely filed a charge of discrimination with the EEOC alleging retaliation under Title VII on May 30 and phone interview on June 6, 2019.

58. Wheeler was issued her dismissal and notice of right to sue from the EEOC on September 10, 2020 and timely sues.

## Causes of Action

### Title VII and Tex. Labor Code Chapter 21 Retaliation against FPI

59. Wheeler incorporates the preceding paragraphs as if restated.

60. FPI is an employer as defined by 42 U.S.C. §2000e(b). FPI is also an employer as defined by Tex. Labor Code § 21.002(8).

61. Wheeler is an employee as defined by 42 U.S.C. §2000e(f) and Tex. Labor Code § 21.002(7).

62. Wheeler was qualified to perform her job duties at FPI.

63. During her employment, Wheeler engaged in activity protected by Title VII and Tex. Labor Code § 21.055. Wheeler reported that Howard used racial slurs and racial epithets in referring to residents. Wheeler reported that Howard spoke in a racially offensive way to a temporary employee. Wheeler reported that Howard told her he would not let some "f------ n-----" tell him what to do when Wheeler told him of the repairs required by the Tyler Housing Authority inspector. Howard refused to make the repairs required. Wheeler reported that Howard made overtly sexually offensive remarks to female residents and that the female residents were uncomfortable around Howard. Wheeler reported that residents and vendors feared retaliation from Howard if they reported his use of racial slurs or sexually offensive comments.

64. Wheeler had a good faith belief she was engaged in protected activity by reporting racially discriminatory behavior towards residents and a temporary employee and sexually offensive comments and behaviors when she made her reports.

65. FPI fired Wheeler within six months after Wheeler engaged in protected activity.

66. FPI's firing of Wheeler is an adverse employment action.

67. FPI fired Wheeler in retaliation for Wheeler's protected activity.

68. FPI's stated reason for firing Wheeler is a pretext for retaliation.

69. FPI's retaliatory actions were taken with malice and/or a reckless disregard for Wheeler's rights.

70. FPI's retaliatory actions damaged Wheeler.

71. Wheeler seeks to recover the damages to which she is entitled for FPI's violation of Title VII and Tex. Labor Code §21.055, including equitable relief, the recovery of her back pay, front pay, fringe benefits, compensatory damages for intangible harms and losses, punitive damages, pre-judgment and post-judgment interest and attorney's fees and costs.

### 42 U.S.C. §1981 Retaliation against FPI

72. Wheeler incorporates the preceding paragraphs as if restated.

73. 42 U.S.C. § 1981 prohibits race discrimination in the making of and enforcing of contracts. This statute provides that "all persons … shall have the same right in every

State and Territory to make and enforce contracts … as is enjoyed by white citizens." This includes contracts of employment.

74. This statute also protects employees who report violations of the law from retaliation.

75. Wheeler engaged in protected activity by reporting race-based discrimination to FPI. Wheeler reported that Howard used racial slurs and racial epithets in referring to residents. Wheeler reported that Howard spoke in a racially offensive way to a temporary employee.  Wheeler reported that Howard told her he would not let some "f------ n-----" tell him what to do when Wheeler told him of the repairs required by the Tyler Housing Authority inspector.  Howard refused to make the repairs required. Wheeler reported that Howard made overtly sexually offensive remarks to female residents and that the female residents were uncomfortable around Howard.  Wheeler reported that residents and vendors feared retaliation from Howard if they reported his use of racial slurs or sexually offensive comments.

76. When Wheeler sent FPI these reports and complaints, she engaged in activity protected by this law.

77. FPI retaliated against Wheeler in violation of 42 U.S.C. § 1981 by firing Wheeler just six months after she engaged in protected activity.

78. FPI's stated reason for its actions are a pretext for retaliation.

79. FPI's retaliatory actions were taken with malice and/or a reckless disregard for Wheeler's rights.

80. FPI retaliatory actions damaged Wheeler.

81. Wheeler seeks to recover the damages she suffered from FPI's retaliation in violation of 42 U.S.C. § 1981, including equitable relief and reinstatement, the recovery of her back pay, lost employment benefits, front pay, compensatory damages for intangible harms and losses, punitive damages, pre-judgment and post-judgment interest and attorney's fees and costs.

**Fair Housing Act Retaliation under 42 U.S.C. § 3617 against FPI and CEG**

82. Wheeler incorporates the preceding paragraphs as if restated.

83. FPI is a person covered by the Fair Housing Act as defined in 42 U.S.C. § 3602(d).

84. CEG is a person covered by the Fair Housing Act as defined in 42 U.S.C. §3602(d).

85. Residents of the Arbors belonged to classes of people are protected by the Fair Housing Act in the exercise or enjoyment of rights protected under 42 U.S.C. §3603 to 3606.

86. FPI and CEG violated 42 U.S.C. § 3604 by discriminating against certain residents in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services of facilities therewith because of race, color, religion, sex, familial status or national origin.

87. FPI and CEG subjected residents of the Arbors to a hostile environment because of race and sex. FPI and CEG refused to provide, delayed in providing, or provided inadequate services to residents of the Arbors because of race or sex.

88. FPI and CEG violated the protections in 42 U.S.C. § 3604.

89. FPI's and CEG's motivation was at least in part intentional discrimination based on race or sex.

90. FPI and CEG were aware of the intentional discrimination based on race or sex to the residents through the actions of Howard.

91. Wheeler objected to FPI's and CEG's violations of these protections and aided and encouraged residents to object to FPI's and CEG's violations of these protections. Wheeler aided and encouraged residents of the Arbors in protected groups in the exercise or enjoyment of rights protected under 42 U.S.C. § 3604 by notifying FPI of Howard's use of racially offensive slurs and sexually offensive language towards the residents, the temporary employee, the housing inspector, and herself. FPI communicated Wheeler's complaints to CEG.

92. By doing so, Wheeler engaged in conduct protected by 42 U.S.C. § 3617 of the Fair Housing Act. Under this statute, "it shall be unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person

in the exercise or enjoyment of any right granted or protected by section 3603, 3604, 3605 or 3606 of this title."

93. FPI coerced, intimidated and threatened Wheeler after Wheeler engaged in protected conduct.  FPI, through Howard, threatened to "get even" with Wheeler and others and threatened them with violence.

94. FPI coerced, intimidated and threatened Wheeler on account of Wheeler's aid or encouragement of the residents' fair housing rights.  CEG threatened Wheeler on account of Wheeler's aid or encouragement of the residents' fair housing rights by asking FPI to terminate Wheeler.

95. FPI and CEG retaliated against Wheeler by terminating her just months after she engaged in protected conduct.

96. FPI's and CEG's retaliation against Wheeler in violation of the Fair Housing Act damaged Wheeler.

97. Wheeler seeks to recover the damages she suffered from FPI's and CEG's retaliation in violation of 42 U.S.C. § 3617, including equitable relief and reinstatement, the recovery of her back pay, lost employment benefits, front pay, compensatory damages for intangible harms and losses, punitive damages, pre-judgment and post-judgment interest and attorney's fees and costs

## Jury Trial

98. Wheeler demands a trial by jury.

**<u>Prayer</u>**

WHEREFORE, Plaintiff Dale S. Wheeler prays this Court enter a judgment declaring the acts and practices of Defendant FPI violate the Title VII, 42 U.S.C. § 1981 and 42 U.S.C. §3617 and that the acts of Defendant CEG violates 42 U.S.C. §3617 and enter such other and further relief to which Plaintiff is just entitled.

Respectfully submitted,

/s/ Karen K. Fitzgerald
Karen K. Fitzgerald
State Bar No. 11656750
Fitzgerald Law, PLLC
8150 N. Central Expy, 10th Floor
Dallas TX 75206
214.265.9958 (direct dial)
(214) 367-6001 (fax)
karen@fitzgerald.law

Attorney for Plaintiff Dale S. Wheeler